1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REGAL WEST CORPORATOIN, a
Washington corporation,

Plaintiff,

v.

MINH KHAI NGUYEN, an individual,

Defendant.

CASE NO. 3:19-cv-05374-RBL

ORDER ON MOTION TO DISMISS

DKT. # 31

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Minh Khai Nguyen's Motion to

Dismiss Plaintiff Regal West Corporation's First Amended Complaint (FAC). Dkt. # 31. Regal

alleges claims related to Nguyen's misuse of Regal's secret information and intellectual

property. Nguyen argues that the Court lacks personal jurisdiction because all of the alleged

misuse occurred outside Washington. Nguyen also argues that Regal's Lanham Act claims, trade

secrete misappropriation claims, and Computer Fraud and Abuse Act (CFAA) claim are

implausible.

In response, Regal contends that Nguyen waived several of his arguments by failing to

raise them in his motion to dismiss the initial complaint, which was withdrawn. *See* Dkt. # 24.

1  Alternatively, Regal contends that the Court does not lack personal jurisdiction and that its

2  claims satisfy Rule 12(b)(6).

3      For the following reasons, the Court GRANTS Nguyen's Motion to Dismiss with respect

4  to Regal's false advertising and CFAA claims but otherwise DENIES Nguyen's Motion.

5  **BACKGROUND**

6      Regal provides its customers with "complete end-to-end logistics solutions, including

7  cross-docking, transportation, and assembly and repackaging services." Dkt. # 27 at 3. Regal

8  alleges that it began developing software that would allow its customers to access real-time

9  information about inventory and shipments decades ago. Around 1999, Regal contracted with a

10 third-party company to continue developing this software, at which time Nguyen was a

11 subcontractor or employee of this third party.

12     Around 2000, Nguyen took the lead on Regal's software development project and visited

13 Regal's place of business in Fife, Washington, to discuss the project. Nguyen continued to work

14 for Regal for roughly 20 years in this capacity, during which time Nguyen allegedly "was given

15 access to . . . Regal's customer database and customer-coding system, as well as pricing

16 information, Regal's customer contracts, and Regal's accounting system." Dkt. # 27 at 5. This

17 was "solely for the purpose of developing and maintaining Regal's software and with the

18 understanding that Nguyen would not disclose such confidential and proprietary information."

19 *Id*. Regal and Nguyen parted ways in February 2019 when Regal terminated its relationship with

20 Nguyen's company, Softketeers, Inc.

21     Regal alleges that Nguyen stole its proprietary information and trademarks while working

22 for Regal to further Nguyen's new business venture, Retail Exchange Network, Inc. (RXN).

23 According to Regal, RXN advertises itself as "an outgrowth of a warehouse management

24

proprietary information technology systems [sic] that has been in place and developed over the last decade." Dkt. # 27 at 6. Regal claims that this description refers to Regal's own custom software that Nguyen helped develop. Regal also alleges that RXN is using Regal's customer database and coding system, based partly on images that RXN uses in its online videos. One of those videos also includes background images of Regal's warehouse and a list of several Regal companies, such as Walmart and Amazon.com.

In its initial complaint, Regal sued both Nguyen and one of Nyguyen's companies, Softketeers, Inc. Dkt. # 1. That complaint included contract- and fraud-based claims against both defendants. Nguyen moved to dismiss, stay, or transfer Regal's initial complaint but withdrew his motion after Regal amended its complaint. Dkt. # 30. Regal's FAC dropped Softketeers as a defendant and omitted the three contract-based claims against Nguyen and Softketeers. Nguyen then brought the current Motion challenging the FAC.

**DISCUSSION**

**1.      Waiver**

Because Nguyen already moved to dismiss Regal's initial complaint without contesting personal jurisdiction or Regal's trademark infringement and unfair competition claims, Regal contends that Nguyen cannot raise those arguments now. Nguyen responds that, because the initial Complaint contained contract claims against Nguyen and Softketeers that clearly supported personal jurisdiction, a 12(b)(2) defense was not available at that time. Regal replies that the defense was available at the time of Nguyen's first motion because personal jurisdiction must exist for each claim and each defendant individually.

Federal Rule 12(b)(2) allows a party to move to dismiss for "lack of personal jurisdiction." According to Rule 12(g) & (h), a party waives "any defense listed in Rule

1  12(b)(2)–(5)" by failing to raise it in an initial motion to dismiss if the defense was "available to

2  the party" at the time. This means that "defendants do not waive the defense of personal

3  jurisdiction if it was not available at the time they made their first defensive move." *Glater v. Eli*

4  *Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) (finding that the defense was not waived because

5  the original complaint "did not put it on notice that her New Hampshire domicile was at least

6  questionable").

7        Here, the "lack of personal jurisdiction" defense was not available to Nguyen before

8  Regal amended its Complaint. As regal appears to concede, the contract-based claims from the

9  initial Complaint made it indisputable that the Court had jurisdiction. Furthermore, those claims

10  were asserted against both Defendants, which means that the Court did not have jurisdiction just

11  over Softketeers. Consequently, because the Court had jurisdiction over both Defendants,

12  Nguyen's only viable argument was that the Court should decline to exercise pendent

13  jurisdiction over the tort claims asserted against him. *See Action Embroidery Corp. v. Atl.*

14  *Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("[A] court may assert pendent personal

15  jurisdiction over a defendant with respect to a claim for which there is no independent basis of

16  personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim

17  in the same suit over which the court does have personal jurisdiction."). But Rule 12(b)(6)

18  provides a defense when the court *lacks* jurisdiction, which is not the same as having discretion

19  to exercise jurisdiction or not. The defense that the Court entirely lacked personal jurisdiction

20  over Nguyen was thus not available and Nguyen can assert it here.

21        On the other hand, Regal is correct that Nguyen waived his 12(b)(6) defense to Regal's

22  Lanham Act claims of trademark infringement and unfair competition by failing to raise them in

23  his prior motion. Regal's original complaint contained these claims, yet Nguyen did not address

24

them in his prior motion to dismiss. *See* Dkt. # 1 at 16-20; Dkt. # 24. Nguyen himself seems to recognize this by making no argument against waiver of these claims and failing to revisit them in his Reply brief. Dkt. # 36 at 9-12. Consequently, the Court will not consider Nguyen's arguments regarding trademark infringement and unfair competition.

## 2.      Personal Jurisdiction

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the initial burden of demonstrating that jurisdiction is appropriate, after which the burden shifts to the defendant to demonstrate that jurisdiction is unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced admissible evidence, which, if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800. However, a district court also may order discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986)).

1    A court's personal jurisdiction analysis begins with the "long-arm" statute of the state in

2    which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d

3    1114, 1123 (9th Cir. 2002). Washington's long-arm statute, RCW 4.28.185, extends the court's

4    personal jurisdiction to the broadest reach that the United States Constitution permits, so the

5    jurisdictional analysis under state law and federal due process are the same.[1] *Byron Nelson Co. v.*

6    *Orchard Management Corp.,* 95 Wn.App. 462, 465 (1999); *Schwarzenegger*, 374 F.3d at 800–

7    01.

8        Personal jurisdiction exists in two forms: general and specific. *Dole Food Co. v. Watts,*

9    303 F.3d 1104, 1111 (9th Cir.2002). For specific jurisdiction, which is at issue here, the Ninth

10   Circuit applies a three-prong test. *Schwarzenegger*, 374 F.3d at 802. First, "[t]he non-resident

11   defendant must purposefully direct his activities or consummate some transaction with the forum

12   or resident thereof; or perform some act by which he purposefully avails himself of the privilege

13   of conducting activities in the forum, thereby invoking the benefits and protections of its laws."

14   *Id*. Second, "the claim must be one which arises out of or relates to the defendant's forum-related

15   activities." *Id*. Finally, "the exercise of jurisdiction must comport with fair play and substantial

16   justice, i.e. it must be reasonable." *Id*.

17       For the first prong, the "purposeful direction" analysis typically applies in tort cases and

18   "usually consists of evidence of the defendant's actions outside the forum state that are directed

19   at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at

20

21   [1] Nguyen tries to argue that RCW 4.28.185 creates greater jurisdictional limitations than the Due Process Clause. He relies on a statement in *Deutsch v. West Coast Machinery Co.* that, "under the long-arm statute, RCW 4.28.185, our courts may assert jurisdiction over nonresident individuals and foreign corporations to the extent permitted by the

22   due process clause of the United States Constitution, *except as limited by the terms of the statute.*" 80 Wash. 2d 707, 711 (1972) (emphasis added). However, when describing the limitations imposed by RCW 4.28.185, the Washington Supreme Court approved of treating the due process standard and the statutory standard as "a single

23   inquiry." *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763, 768, 783 P.2d 78, 80 (1989). A constitutional analysis is therefore appropriate.

24

803. To determine if the defendant purposefully directed activities at the forum, the Ninth Circuit

applies the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the

defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum

state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton*

*Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). In cases involving

online commerce, the Ninth Circuit has held that simply maintaining a passive website without

"conduct directly targeting the forum" is not enough to satisfy the express aiming prong. *Id*. at

1229 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)).

Here, Regal argues that jurisdiction is proper because Nguyen entered into contracts and

performed work for Regal in Washington, pilfered Regal's secret information housed in

Washington servers, and misappropriated that information to launch RXN, which uses Regal's

trademarked and copyrighted information in its nation-wide advertisements. Nguyen responds

that his work in Washington and acquisition of Regal's information were not the harm-causing

events that give rise to Regal's claims. Instead, Nguyen contends that all of Regal's claims relate

to Nguyen's *use* of rightfully *acquired* information. Because that use occurred later in California

on a website that did not specifically target Washington, Nguyen asserts that he did not aim at

the Washington forum.

Nguyen is likely correct that RXN's online content does not specifically target

Washington in a way that could support jurisdiction, but he is wrong about the scope of activity

relevant to jurisdiction. Although Nguyen's intentional acts of allegedly misappropriating trade

secrets may have consummated Regal's harm, Nguyen's acquisition of the information while

working for Regal in Washington is inseparable from the later misappropriation. Regal alleges

1   that Nguyen "exploit[ed] his relationship with Regal" to utilize the "proprietary information

2   derived therefrom." Dkt. # 27 at 16. Indeed, Nguyen does not deny that he repeatedly traveled to

3   Fife, Washington, to perform work for Regal and acquired the relevant information from servers

4   in Washington. Dkt. # 31 at 3; Dkt. # 32 at 2.   This establishes that Nguyen purposely directed

5   his activities at Washington State. *See Mee Indus., Inc. v. Adamson*, No. 218CV003314CASJCX,

6   2018 WL 6136813, at *4 (C.D. Cal. July 27, 2018) (although misappropriation occurred

7   elsewhere, defendant directed his activities at the forum by regularly visiting the company's

8   headquarters and remotely accessed California-based trade secrets). With the purposeful

9   direction prong satisfied, there is little doubt that Nguyen's dealings with Regal would inform

10  him that the alleged harm in this case would likely be suffered in Washington.

11        Nguyen argues that, because his business dealings with Regal were carried out through

12  his Softketeers company, his contacts with Washington are unrelated to this case, which focuses

13  on Nguyen's RXN business. But Regal has sued Nguyen, not RXN. Although Nguyen may have

14  been representing Softketeers when he did business with Regal, Regal has alleged that Nguyen

15  himself stole its secrets and used them in his RXN venture. This makes Nguyen's conduct in

16  Washington relevant to jurisdiction.

17        In addition to Nguyen purposely directing his conduct at Washington, the final two

18  requirements of the specific personal jurisdiction analysis are also met. Because Nguyen never

19  would have acquired Regal's information without cultivating a business relationship in

20  Washington, the alleged harm clearly arises out of Nguyen's activities directed at the forum.

21  Finally, Nguyen has made no argument that could satisfy his burden of demonstrating that

22  jurisdiction is unreasonable. Perhaps this is because Nguyen's extensive history of dealing with a

23  Washington-based company makes it eminently just and fair that Nguyen would be hailed to

24

1  court in this forum. Because the Court at least has jurisdiction over Regal's trade secret

2  misappropriation claims, the Court will exercise jurisdiction over all of Regal's claims. *See*

3  *Action Embroidery*, 368 F.3d at 1180. Nguyen's Motion to Dismiss for Lack of Personal

4  Jurisdiction is therefore DENIED.

5  **3.      Failure to State a Claim**

6        Dismissal under Federal Rule 12(b)(6) may be based on either the lack of a cognizable

7  legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

8  *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

9  facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

10  678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

11  content that allows the court to draw the reasonable inference that the defendant is liable for the

12  misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,

13  conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

14  12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

15  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

16  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

17  and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

18  must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

19  550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead

20  "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at

21  678 (citing *id.*).

22        On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

23  amend the pleading was made, unless it determines that the pleading could not possibly be cured

24

1   by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

2   247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether

3   there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v.*

4   *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

5          Nguyen first challenges Regal's claim of false advertising (Count III) under the Lanham

6   Act. "The elements of a false advertising claim are: (1) a false statement of fact by the defendant

7   in a commercial advertisement about its own or another's product, (2) the statement actually

8   deceived or has the tendency to deceive a substantial segment of its audience, (3) the deception is

9   material, in that it is likely to influence the purchasing decision, (4) the defendant caused its false

10  statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as

11  a result of the false statement." *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1010 (D.

12  Ariz. 2017) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.

13  1997)). "Even if an advertisement is not literally false, relief is available under Lanham Act

14  § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the

15  consuming public." *Southland Sod Farms*, 108 F.3d at 1140. However, "detailed or specific

16  factual assertions . . . are necessary to state a false advertising cause of action." *Cook, Perkiss &*

17  *Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

18         False advertising claims are subject to heightened pleading standards because of their

19  basis in fraud. *Kische USA LLC v. Simsek*, No. C16-0168JLR, 2016 WL 7212534, at *9 (W.D.

20  Wash. Dec. 13, 2016). The Court therefore "strips away" allegations that are not pled with

21  particularity. *Id.*

22         Nguyen contends that the generic images used in RXN's videos could not plausibly

23  constitute false, deceptive statements that materially injured Regal. In its FAC, Regal alleges that

24

1  Nguyen's false advertising consists of using "images of Regal's warehouse, customer database,

2  and other images" to imply that "RXN has the same capabilities and expertise as Regal." Dkt.

3  # 27 at 14. More specifically, Regal argues that these images falsely imply that RXN provides

4  warehousing and transportation services and serves the same customers as Regal, such as

5  Walmart and Amazon.com. Dkt. # 34 at 16.

6      First, Regal's vague reference to "other images" must be stripped from the FAC. The

7  remaining images of Regal's warehouse and references to Regal's customers alone do not

8  amount to factual statements that can form the basis of a false advertising claim. With respect to

9  the warehouse images, the general similarity of warehouses does not allow a viewer to discern

10  whether this is Regal's warehouse at all. And although the warehouse images may lead some

11  viewers to think RXN provides physical logistical services, this is not an obvious conclusion.

12  With respect to the names of prominent retailers, it is again unclear what relationship RXN has

13  with these companies; the images alone do not mean they are customers. *See Newcal Indus., Inc.*

14  *v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is quantifiable, that

15  makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable

16  statement of fact.). As currently constituted, Regal's false advertising claim is not plausible.

17      Next, Nguyen challenges Regal's federal and state trade secret misappropriation claims

18  (Counts IV & V). Under both the Defend Trade Secrets Act and Washington's Uniform Trade

19  Secrets Act, information qualifies as a "trade secrete" if "(A) the owner thereof has taken

20  reasonable measures to keep [it] secret" and "(B) the information derives independent economic

21  value, actual or potential, from not being generally known to, and not being readily ascertainable

22  through proper means by, another person who can obtain economic value from the disclosure or

23  use of the information." 18 U.S.C.A. § 1839(3); RCW 19.108.010(4). "Although the complaint

24

1    need not spell out the details of the trade secret, a plaintiff seeking relief for trade secret

2    misappropriation must identify the trade secret with sufficient particularity . . . to permit the

3    defendant to ascertain at least the boundaries within which the secret lies." *Bombardier Inc. v.*

4    *Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) (internal quotations

5    omitted).

6        In its FAC, Regal accuses Nguyen of misappropriating the "business process and know-

7    how embodied in its custom Software, its customer database, and its customer-coding system."

8    Dkt. # 27 at 15. Nguyen argues that, because Regal's complaint only names five well-known

9    retailers as the misappropriated customer identities, that information cannot qualify as secret.

10    Nguyen also contends that the alphanumeric codes that Regal uses to identify its customers have

11    no economic value to others. Finally, Nguyen points out that, by merely alleging that Regal had

12    an "understanding" with Nguyen that he would not disclose or otherwise use its information,

13    Regal has not alleged reasonable measures to maintain its information's secrecy. Regal responds

14    that its *entire* customer database does have economic value and that it is not required to allege

15    any specific type of "reasonable measures" to protect its information.

16        While the Court is skeptical about the economic value of Regal's customer coding

17    system, courts have held that customer databases are valuable. *See, e.g., MAI Sys. Corp. v. Peak*

18    *Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993); *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-

19    2231-BAS-BGS, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018). Here, although the FAC

20    only includes five examples of Regal's customers, Nguyen is incorrect that those are the only

21    names he is accused of stealing. The claim plainly states that Nguyen misappropriated Regal's

22    "customer database." Dkt. # 27 at 15. Indeed, naming every one of its customers in the complaint

23    would cut against Regal's position that its database is secret.

24

1      In addition, Regal has satisfied its initial pleading obligations by alleging that it had a

2   confidentiality "understanding" with Nguyen during the period he was designing Regal's

3   software. Although the specifics of who said what to Nguyen can be worked out through

4   discovery, Regal is not required to include such details in its complaint. Furthermore, Nguyen is

5   incorrect that a written confidentiality agreement is necessary for a trade secret

6   misappropriation claim. *See Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1206

7   (W.D. Wash. 2010) (declining to grant summary judgment on whether an email request to keep a

8   presentation confidential was a reasonable measure to protect a trade secret). While Nguyen may

9   well be right that Regal did not do enough to protect its information, that is not for the Court to

10  decide at this early stage.

11      Finally, Nguyen challenges Regal's claim under the CFAA (Count VI) that Nguyen

12  "exceeded the scope of his authorized access by accessing certain of Regal's documents, files, or

13  drives . . . for the benefit of his venture, RXN." These allegations line up with 18 U.S.C.A.

14  § 1030(a)(4), which prohibits "knowingly and with intent to defraud, access[ing] a protected

15  computer without authorization, or exceed[ing] authorized access." But the Ninth Circuit has

16  defined "exceeds authorized access" narrowly to include only "someone who's authorized to

17  access only certain data or files but accesses unauthorized data or files—what is colloquially

18  known as 'hacking.'" *United States v. Nosal*, 676 F.3d 854, 856-57, 863 (9th Cir. 2012); *see also*

19  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] defendant can

20  run afoul of the CFAA when he or she has no permission to access a computer or when such

21  permission has been revoked explicitly."). It does not apply to "someone who has unrestricted

22  physical access to a computer, but is limited in the use to which he can put the information." *Id*.

23

24

1  Because Regal has not alleged that Nguyen accessed Regal's computer files without permission,

2  its CFAA claim fails.

3       The Court is unpersuaded by Regal's attempt to differentiate Nguyen-as-Softketeers and

4  Nguyen-as-RXN in order to show that only the former had permission to access Regal's files.

5  Regal chose to sue Nguyen himself, not his companies; whatever representative capacity Nguyen

6  may have carried when he accessed Regal's information, he never stopped being Nguyen-as-

7  Nguyen. In any case, even if Nguyen accessed Regal's information for the eventual benefit of

8  *RXN, that does not mean he could not have also accessed it for Softketeers's authorized purpose*

9  of building software. Regal's CFAA claim is therefore dismissed.

10                                    **CONCLUSION**

11       For the above reasons, Nguyen's Motion to Dismiss is GRANTED with respect to

12  Regal's false advertising and CFAA claims. Nguyen's Motion is DENIED in all other respects.

13  Regal has leave to amend its false advertising and CFAA claims and may file an amended

14  complaint curing the deficiencies described here within 20 days of this Order. If Regal does not

15  amend its complaint within 20 days, the false advertising and CFAA claims will be dismissed.

16       IT IS SO ORDERED.

17

18       Dated this 30th day of September, 2019.

19

20       _____
         Ronald B. Leighton
21       United States District Judge

22

23

24