UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REGAL WEST CORPORATION,<br><br>     Plaintiff,<br><br> v.<br><br>MINH KHAI NGUYEN et al.,<br><br>     Defendant. | CASE NO. 3:19-cv-05374-TL<br><br>ORDER DENYING REGAL'S MOTION TO LIFT STAY AND FOR LEAVE TO FILE A PROPOSED SECOND AMENDED COMPLAINT |

   This matter is before the Court on Plaintiff Regal West Corporation's ("Regal's") Motion to Lift Stay and for Leave to File a Proposed Second Amended Complaint. Dkt. No. 102. Regal's motion to lift the previously granted stay is now moot, as the stay expired on Monday, April 25, 2022. Dkt. No. 100. For the reasons stated herein, the Court finds that Regal has failed to show good cause for joining additional defendants beyond the previously scheduled joinder date and reserves ruling on whether Regal should be allowed to add new claims against Defendant Minh Khai Nguyen under the Racketeering Influenced and Corrupt Organizations Act ("RICO") until final judgment is entered in the parallel litigation currently pending in the US District Court for

the Central District of California, *Softketeers, Inc. v Regal West Corporation et al.*, 8:19-cv-00519-JWH-JDE ("the *Softketeers* case").

I. **BACKGROUND**

After Mr. Nguyen initiated the *Softketeers* case in California in early 2019, Regal filed this case in May 2019 raising claims against both Mr. Nguyen and Softketeers, Inc. *See* Dkt. No. 1. Defendant filed a motion to dismiss, stay, or transfer this case to be tried with the more senior related California action. Dkt. No. 24. Plaintiff responded by filing a First Amended Complaint ("FAC") on July 3, 2019, dropping Softketeers, Inc., from this case and raising seven counts against Mr. Nguyen in his individual capacity, including claims under the Lanham Act, the Defend Trade Secrets Act, Washington's Trade Secrets Act, the Computer Fraud and Abuse Act, and the Digital Millennium Copyright Act. Dkt. No. 27. The crux of Regal's claims is that Mr. Nguyen misappropriated Regal's trade secrets through its relationship with Softketeers, Inc.—a closely held corporation owned and operated primarily by Mr. Nguyen—to benefit himself and his other closely held company, Retail Exchange Network, Inc. ("RXN"). After withdrawing his prior motion, Mr. Nguyen refiled a new motion to dismiss the FAC. Dkt. No. 31. On September 30, 2019, the Court granted in part and denied in part Mr. Nguyen's motion, dismissing two of the seven counts, including the False Advertising claims under the Lanham Act and all claims under the Computer Fraud and Abuse Act. Dkt. No. 37.

On January 16, 2020, the Court entered a case management schedule, setting a deadline for joining additional parties by March 15, 2020, and a discovery completion deadline of October 13, 2020. Dkt. No. 45. On April 17, 2020, one month after the joinder deadline, Regal moved to compel discovery related to RXN, which Mr. Nguyen had objected to on the grounds that he was sued in his personal capacity, and RXN was not a party to the action. Dkt. No. 51. Plaintiff argued that the discovery was warranted to the extent Mr. Nguyen was using RXN as a

vehicle for his personal wrongdoings. *See id.* at 1, 5, 10. On May 12, 2020, the Court granted the motion and ordered Mr. Nguyen to "submit complete responses, including information and documents within his control at RXN" to Regal's specified interrogatories and requests for production. Dkt. No. 55. Regal notes that Mr. Nguyen's May 2020 supplemental discovery responses indicated that his RXN cofounder, Garry Neeves, was "'responsible for [the] sales and marketing' of RXN and averring that Mr. Neeves 'approv[ed]' certain actions of RXN." Dkt. No. 102 at 4-5 (revisions in original, internal citations omitted) (quoting Dkt. No. 103, Ex. 3 at 3, 7, 10).

Discovery then proceeded, including additional motions practice. On August 21, 2020, Mr. Nguyen moved to compel specific discovery responses and to generally object to the pace of Regal's document productions. Dkt. No. 60. After learning in July that Mr. Nguyen's personal attorney in this action was not authorized to accept service on behalf of RXN and failing to achieve personal service of third-party subpoenas on RXN in August, on September 10, Regal moved to compel Mr. Nguyen to accept service on behalf of RXN through his personal attorney. Dkt. No. 68. Before a ruling was entered on Mr. Nguyen's fully briefed motion, and before opposition briefing was due on Regal's motion, the Parties jointly moved to stay all proceedings for two months because Mr. Nguyen's wife was hospitalized with a serious health condition. Dkt. No. 70. The Court granted the stay and struck the pending discovery motions. Dkt. No. 71.

The stay has subsequently been extended five times at the Parties' request. *See* Dkt. Nos. 79, 82, 88, 92, 100. Most recently, on January 14, 2022, the Parties asked the Court to vacate "all current deadlines" and extend the stay to April 25, 2022, representing that

> [w]hile trial is now complete in [the *Softketeers* case] and the court heard oral argument on four of the parties' post-verdict, prejudgment motions on January 11, 2022, the hearing was continued as to the remaining four post-verdict motions until February 22, 2022. Once all post-verdict motions are decided, the case is expected to proceed to judgment and related post-judgment briefing, as necessary

and appropriate. The parties anticipate that resolution of these motions in [the *Softketeers* case] will impact certain issues in this litigation.

Dkt. No. 98 at 1-2. The Court granted the Parties' request and ordered the Parties to file a joint status report by no later April 18, 2022. Dkt. No. 100.

On March 4, 2022, Regal filed the instant motion to lift the stay early and for leave to file a proposed Second Amended Complaint ("SAC") joining both RXN and Garry Neeves as additional defendants, adding several new claims against the new defendants, and including a new RICO claim against all three parties. Dkt. No. 102. The motion was noted for March 25, one month before the stay was set to end. Mr. Nguyen filed his opposition on March 21 (Dkt. No. 109), and Regal replied on March 25 (Dkt. No. 112). The Parties also filed a joint status report on April 18 as ordered. Dkt. No. 113. In the joint status report, the Parties acknowledge that the *Sofketeers* case has still not yet fully resolved, although they now appear to disagree as to how that action impacts any issues in this case and whether an extension of the stay is warranted. *Id.* at 2-3.

## II. DISCUSSION

The Court-ordered deadline to join additional parties was March 15, 2020. Dkt. No. 45. Although Regal previously amended its Complaint to remove a defendant (Softketeers, Inc.), it did not attempt to join either RXN or Mr. Neeves at any point prior to this deadline. Therefore, Regal is required to assert good cause for relief from the joinder deadline before the Court will entertain its motion for leave to amend. Fed. R. Civ. Proc. 16(b)(4). Good cause under Rule 16 "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the good cause standard is met, the Court then considers the propriety of the proposed amendments under Rule 15. *Id.* Leave to amend should be freely granted "where justice so requires" (Fed. R. Civ. Proc. 15(a)(2)); however, the

Court has discretion to deny an amendment under Rule 15 if it finds that the amendment (1) is sought in bad faith, (2) would cause undue delay, (3) would prejudice the opposing party, (4) is repetitive of previous amendments that failed to cure a deficient pleading; or (5) is futile. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

### A. Regal was not Diligent in Moving to Join RXN

Regal fails to show good cause for its belated request to join RXN as an additional party. For good cause, the Court's primary consideration is "the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. At a minimum, Regal must show that it could not have reasonably met the March 15, 2020, joinder deadline despite its diligence. *Id.* (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). Regal's initial Complaint as well as its FAC, both of which were filed before the March 15 deadline was even set, contain numerous references to RXN, including repeated references to how Mr. Nguyen's alleged misconduct was intended to enrich both himself *and* RXN. *See generally* Dkt. Nos. 1 (including 59 references) and 27 (including 63 references). Regal has not provided any rationale for why it could not have reasonably joined RXN prior to the deadline.

Instead, Regal claims that it did not have sufficient visibility into RXN's activities to justify adding RXN. Regal blames Mr. Nguyen's resistance in responding to its early discovery requests about RXN, as evidenced by the Court granting its April 2020 motion to compel, for its inability to learn more about RXN's potential involvement prior to the deadline. Dkt. No. 102 at 8. Regal claims that it "apprised itself of every opportunity to seek information regarding . . . RXN's involvement . . . . [by] serv[ing] Mr. Nguyen with discovery requests seeking information regarding . . . RXN's relevancy to this action." *Id*.

Gaining such visibility is the purpose of discovery, but there is no question that adding RXN as a codefendant early on would have permitted Regal to directly seek the information it

now says it lacked. Regal chose not to do so. In fact, Regal previously admitted that it intentionally pursued only claims against Mr. Nguyen in his individual capacity. In its April 2020 motion to compel (filed a month after the joinder deadline), Regal argued that Mr. Nguyen's resistance to RXN-related discovery was misplaced because "Regal is not attempting to obtain . . . discovery into the activities of RXN." Dkt. No. 51 at 10. Regal further represented that its claims in its FAC intentionally "focus on Nguyen's wrongful misappropriation of Regal property through Softketeers for the benefit of RXN" and not on RXN's potential complicity with Mr. Nguyen's alleged misconduct. *Id.* Far from indicating diligence in assessing RXN's involvement, these admissions show that Regal had knowledge about RXN's potential involvement and chose not to add claims against RXN directly in its FAC as a deliberate aspect of its litigation strategy. Had Regal joined RXN as codefendant early on, it would not have needed to narrow the scope of its RXN-related discovery or seek third-party discovery, and likely would have avoided its need for discovery motions practice altogether.

    Regal also admits that it received sufficient information to justify moving for leave to add RXN after receiving Mr. Nguyen's supplemental responses in May. Dkt. No. 102 at 8. Yet again, instead of moving for leave to add additional parties just two months after the deadline elapsed, Regal chose to pursue additional third-party discovery. *See Id.* at 8-9. This deliberative decision shows that Regal was not diligent in moving to add RXN but was instead intent on furthering its intentional strategy of pursuing its claims against Mr. Nguyen alone.

    Whatever its reasons for not initially including allegations directly against RXN, Regal chose how to build its house, cannot now take it apart to rebuild it, and must live in it as it stands. Regal *could have* added such allegations prior to March 15, 2020 or, at the latest, a couple of months following the deadline. Therefore, Regal's request for leave to amend its FAC to add claims against RXN is DENIED.

**B.   Regal was not Diligent in Moving to Join Garry Neeves**

Regal fails to show good cause for its belated request to join Mr. Neeves as an additional party. Regal asserts that it could not have known of Mr. Neeves' involvement prior to the March 15, 2020, deadline, and only learned of it after receiving Mr. Nguyen's RXN-related supplemental discovery responses in May 2020. Dkt. No. 102 at 4-5. Again, Regal attempts to shift the blame to Mr. Nguyen for its inability to discover sufficient information to add claims against Mr. Neeves. *Id.* at 5, 8-9. The Court's focus, though, is on Regal's actions, which do not show diligence as to its claims against Mr. Neeves.

As an initial matter, the Court notes that Gary Neeves is one of the founders of Regal alongside his father, Roque Neeves. Dkt. No. 28 at 12. Further, Regal admits that Mr. Nguyen's May 2020 supplemental discovery responses informed it that Gary Neeves was not only responsible for the sales and marketing of RXN but also approved certain actions of RXN. *Id.* at 4. Assuming the truth of Regal's assertion that it only learned of Mr. Neeve's involvement in May 2020 after receiving supplemental discovery responses, Regal could have moved for relief from the deadline to add parties at that time, which was just two months after the deadline and still at the outset of discovery, or it could have issued a subpoena to Mr. Reeves in his RXN capacity at that time. But Regal made a choice to do neither.

The Court is skeptical about Regal's claim that it was completely unaware of Mr. Neeves' potential involvement until receiving the May 2020 supplemental discovery responses. The record clearly shows that Regal had information concerning Mr. Neeves' potential involvement prior to the deadline for adding parties. As early as June 2019, Mr. Nguyen had disclosed Mr. Neeves' connection to RXN and his potential involvement in the alleged misconduct. *See* Dkt. No. 24 at 2; Dkt. No. 26 at ¶ 6. In January 2020, Mr. Neeves was also identified as a potential witness having information regarding "Regal's authorization of or

acquiescence in conduct alleged in plaintiff's FAC" and "persons who oversaw and directed, and participated in, conduct alleged in the FAC." Dkt. No. 110-5 at 4. Again, in February 2020, in response to Regal's written discovery, Mr. Nguyen disclosed that "Garry Neeves has served as CEO and director of RXN" and that "Garry Neeves, former vice president of Regal . . . , authorized the use of certain elements in connection with the advertising and marketing of RXN." Dkt. No. 110-6 at 4, 12, 14. These disclosures surely put Regal on notice of Mr. Neeves' potential involvement well before the March 15, 2020, joinder deadline.

Even if the Court were to accept Regal's contention that it could not have known about Mr. Neeves' potential involvement prior to receiving the May 2020 supplemental discovery responses, Regal must still show that it was diligent in seeking to add Mr. Neeves in the nearly two years that has since elapsed. Putting aside the period in which this case was stayed at the Parties' request,[1] Regal still had the four-month period between May and September 2020 in which it could have moved to add the claims again Mr. Neeves. Regal admits that Mr. Nguyen's May 2020 supplemental responses were "sufficient to form a basis for this Motion," yet it chose to pursue third-party discovery instead. Dkt. No. 102 at 8-9.

Regal's third-party discovery efforts also belie its claim that it "apprised itself of every opportunity to seek information regarding Mr. Neeves' . . . involvement in the circumstances underlying this action." Dkt. No. 102 at 8. Nothing in Regal's stricken motion to compel—which it filed four months after it received the supplemental discovery responses—indicates an intent to attain discovery regarding Mr. Neeves' involvement. *See generally* Dkt. Nos. 68, 68-1 thru 68-7, 69. In fact, Regal only ever attempted to serve Mr. Nguyen, as RXN's registered agent, with

---

[1] The initial stay was set to last only two months, and Regal voluntarily joined the five separate extension requests, each of which represented an opportunity for Regal to oppose extending the stay so it could move for the instant amendments.

RXN-specific subpoenas; never once did Regal attempt to serve Mr. Neeves with any discovery directly or even as an officer of RXN. *Id.*

Regal's own actions fall well short of showing diligence in ascertaining Mr. Neeves' potential involvement in this case. Therefore, Regal's request for leave to amend its FAC to add claims against Garry Neeves is DENIED, and the Court does not need to reach the Rule 15 inquiry.

### C.  The Court Reserves Ruling on Whether Regal May Add Its RICO Claims Against Mr. Nguyen

Per the above, Regal cannot add its proposed RICO claims as to RXN or Mr. Neeves. The question remains whether the Court should grant Regal leave to add the RICO claims as to Mr. Nguyen. Leave to amend should be freely granted "where justice so requires" (Fed. R. Civ. Proc. 15(a)(2)), but the Court has discretion to deny any amendment if it finds that the amendment (1) is sought in bad faith, (2) would cause undue delay, (3) would prejudice the opposing party, (4) is repetitive of previous amendments that failed to cure a deficient pleading, or (5) is futile. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Mr. Nguyen argues that Regal generally seeks to amend its FAC (1) in bad faith for retaliation for its unfavorable outcome in the *Softketeers* case and (2) to unduly delay proceedings and (3) prejudice Mr. Nguyen as an individual defendant by belatedly expanding the scope of this litigation. Dkt. No. 109 at 12-15. Mr. Nguyen also argues that the RICO claim, specifically, is futile because of the jury verdict in the *Softketeers* case. *Id.* at 15.

#### 1.  General Bad Faith, Undue Delay, and Prejudice

Mr. Nguyen's general arguments rest essentially on the delay and subsequent prejudice he would experience from the greatly expanded scope of litigation in this case if all of Regal's amendments were allowed. Dkt. No. 109 at 12-13. The delay would come from the fact that the stay was initially entered with only about a month remaining in the discovery period but

1  allowing the amendments at this stage would require a considerable expansion of necessary

2  discovery. *Id.* Mr. Nguyen argues that such tactical late-stage amendments are inherently

3  prejudicial and evidence bad faith. Dkt. No. 109 at 14. Mr. Nguyen also points to the fact that he

4  is an individual defendant and any expansion or delay in the litigation "threatens to swamp [his]

5  resources . . . . [which] are meager in comparison to" Regal's. *Id.* at 14-15; *see also Priddy v.*

6  *Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants through the time and

7  expense of continued litigation on a new theory, with the possibility of additional discovery,

8  would be manifestly unfair and unduly prejudicial." (internal quotations and citations omitted)).

9         Mr. Nguyen also raises several arguments calling into question Regal's true motives for

10 seeking the amendments. For example, Mr. Nguyen argues that many of the allegedly new

11 allegations could have been raised earlier in this litigation (see discussion above regarding claims

12 against RXN and Mr. Neeves), including claims that it dropped from its original Complaint in

13 response to Mr. Nguyen's initial motion to dismiss, but Regal intentionally chose to sue Mr.

14 Nguyen individually instead for familial reasons. Dkt. No. 109 at 12-13. Further, Mr. Nguyen

15 disputes whether any of the allegedly new information that came out of the *Softketeers* case is

16 actually new at all, noting that much of it had been disclosed well before the initial stay was

17 entered in this case.[2] *Id.* at 13.

18        Additionally, the primary change in circumstance since May 2020, when Regal

19 acknowledges it received sufficient information "to form the basis for this Motion" (Dkt.

20 No. 102 at 8), is that it received an unfavorable jury verdict in the *Softketeers* case. According to

21 Mr. Nguyen, this raises the suspicion that Regal's proposed amendments are actually a

---

24 [2] The Court again notes that Regal also had several opportunities to oppose extending the stay in order to seek leave to add any new claims based on information it learned during the *Softketeers* case.

ORDER DENYING REGAL'S MOTION TO LIFT STAY AND FOR LEAVE TO FILE A PROPOSED SECOND AMENDED COMPLAINT - 10

retaliatory attempt to multiply the litigation in this case because it knows that it has more resources.

The Court notes that its decision to deny Regal leave to add claims against the proposed additional defendants prohibits nearly all of the proposed amendments. While the Court acknowledges that the discovery period had *nearly* run when the stay was initially entered, it had not yet elapsed. Furthermore, *both* Parties were actively engaged in motion practice at the time. It is not unreasonable to assume that the initial discovery period may have been expanded anyway. Thus, whatever Regal's true motivations, the prejudicial effects of allowing all of the amendments are generally ameliorated when considering only adding the RICO claims against Mr. Nguyen, and "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (internal quotation and citation omitted).

For these reasons, Mr. Nguyen's general arguments against the amendments do not preclude allowing Regal to add the RICO claims against Mr. Nguyen in his individual capacity.

### 2. Futility of the RICO Claims Due to the Verdict in the *Softketeers* Case

Mr. Nguyen also argues that the RICO claims would be barred by the verdict in the *Softketeers* case, assuming the court there enters a judgment in line with the verdict upon resolution of the Parties' still pending post-trial motions. Dkt. No. 109 at 15. In the recently filed joint status report, Mr. Nguyen argues that the stay in this case should be extended at least until judgment is entered in the *Softketeers* case. Dkt. No. 113 at 3. Regal disputes that the judgment in the *Softketeers* case will affect its RICO claims in any way. Dkt. No. 112 at 6-7.

For its RICO claim, Regal is required to allege at least two predicate offenses to establish the necessary element of a pattern of racketeering activity. *See* 18 U.S.C. § 1961. The Supreme Court has further clarified that this is a minimum standard and "that while two acts are

necessary, they may not be sufficient." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) (internal quotation marks omitted) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n.14 (1985)).

As to the pattern of racketeering activity element, Regal's proposed amendments allege "multiple, repeated, and ongoing acts of trade secret misappropriation in violation of 18 U.S.C. § 1832." Dkt. No. 103-2 at ¶ 192. Specifically, Regal alleges that Mr. Nguyen misappropriated "Regal's custom Software" (*id.* at ¶ 189) and misappropriated "Regal's confidential and proprietary customer database and customer-coding system" (*id.* at 190). Mr. Nguyen argues that the jury in the *Sofketeers* case found that Softketeers, Inc., not Regal, owned the alleged "custom Software" that forms one of the alleged predicate acts of trade secret misappropriation. Dkt. No. 109 at 15. Regal disputes Mr. Nguyen's representation of what the verdict means and claims that the custom software nonetheless has Regal proprietary information embedded within it.[3] Dkt. No. 112 at 7.

However, the Parties previously represented "that resolution of [post-verdict] motions in [the *Softketeers* case] will impact certain issues in this litigation" even before the proposed amendments. Dkt. No. 98 at 2. Regal does not dispute its prior representation, but instead argues against a continued stay because the *Softketeers* case will not have an "*outcome- determinative* impact on this action." *See* Dkt. No. 113 at 2 (emphasis added). Neither Party specifically addresses what, if any, effect the *Softketeers* decision will have on the claims raised in the FAC, but the Court countenances the Parties prior representations that the still pending post-verdict motions and judgement *could* impact the current claims in this case. Consequently, it seems that

---

[3] It is unclear if the alleged "trade secret information embedded in" the software is separate and distinct from the proprietary "customer database and customer-coding system" that forms the second alleged predicate act of misappropriation.

determining whether the RICO claim would be futile at this juncture turns on resolving the dispute as to what issues were specifically resolved in the *Sofketeers* case. The Court acknowledges, though, that judgement has yet to be entered, so a final resolution is still forthcoming, notwithstanding any potential appeal. For these reasons, the Court believes there is good cause to extend the previous stay, at least until final judgement is entered in the *Softketeers* case.

### III.   ORDER

For the reasons stated above, the Court ORDERS that

1. Regal's Motion to Lift Stay and for Leave to File a Proposed Second Amended Complaint (Dkt. No. 102) is DENIED. Regal's request to lift the previous stay is moot, and the Court finds that Regal has failed to show good cause for joining additional defendants beyond the joinder deadline and reserves ruling on whether Regal should be allowed to add new claims against Mr. Nguyen at this time.
2. This case shall be stayed until (i) final judgement is entered in the *Softketeers* case, (ii) it is lifted by stipulated request of the Parties, or (iii) it is otherwise ordered by this Court.
3. The Parties shall file a joint status report regarding the status of this case **by no later than fourteen (14) days** after final judgment is entered in the *Softketeers* case.
4. Plaintiff may, at any time after final judgment is entered in the *Softketeers* case, but **no later than fourteen (14) days after the Parties file their joint status report**, reinitiate its motion for leave to amend its complaint to add the RICO claims against Mr. Nguyen. Plaintiff shall include a discussion of the impact, if any, the *Softketeers* case has on the claims raised in this case. All relevant procedural rules regarding such motions will apply, including meet and confer and noting requirements.

5. If Plaintiff chooses to forgo the RICO claims, and the Parties agree that any still pending decisions or potential appeals in the *Softketeers* case do not preclude this case from proceeding in its current stature, the Parties' may jointly move the Court to lift the stay so this litigation may proceed.

Dated this 9th day of May 2022.

Tana Lin
United States District Judge